**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KIM L. ANDERSON,**

     **Petitioner,**

                                       **Case No. 2:13-CV-622**

     **v.**                                 **Judge Sargus**

                                       **Magistrate Judge King**

**NORMAN ROBINSON,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, ECF 3, Respondent's *Return of Writ*, ECF 14, Petitioner's *Reply,* ECF 15, and the exhibits of the parties.

The case involves Petitioner's convictions after a jury trial in the Franklin County Court of Common Pleas on one count of engaging in a pattern of corrupt activity, one count of theft, five counts of forgery, five counts of money laundering, and one count of identity fraud.  On November 6, 2008, the trial court imposed a sentence of fifteen years' incarceration.  Petitioner unsuccessfully pursued a direct appeal.  He also filed an untimely application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), and an untimely petition for post conviction relief.   The trial court denied Petitioner's motion for a new trial based on newly discovered evidence as untimely, and Petitioner did not file an appeal from that decision.  Petitioner filed various additional post conviction or collateral proceedings in connection with his convictions, all without success.  For example, he filed a motion for re-sentencing and for an order of contempt, a motion to vacate the order of restitution, to vacate his conviction based on prosecutorial misconduct, and to hold prosecution witness Christina Spencer in contempt, a

motion to vacate and a second motion for a new trial, a motion to vacate sentence, a motion for "plain error" pursuant to Ohio Criminal Rule 52(B), and a motion to disqualify the trial judge. *See Return of Writ*, PageID# 208-18.

This is not Petitioner's first federal habeas corpus petition. On February 10, 2012, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that the evidence was constitutionally insufficient to sustain his convictions, that he was denied a fair trial based on prosecutorial misconduct, that the trial court committed reversible error when it created its own jury questionnaire, and that he was unfairly convicted due to misconduct by prosecution witness Christine Spencer. *See Anderson v. Warden, Chillicothe Correctional Institution*, No. 2:12-cv-130, 2012 WL 1900649 (S.D. Ohio May 24, 2012). On July 12, 2012, this Court dismissed that action without prejudice, at Petitioner's request, as unexhausted. *Id., Order* (July 12, 2012).

On June 28, 2013, Petitioner filed this action. He alleges that the trial court unconstitutionally imposed consecutive sentences (claim one); that the imposition of consecutive sentences on his convictions for forgery and theft violates the Double Jeopardy Clause and Ohio law on allied offenses of similar import (claim two); that the evidence is constitutionally insufficient to sustain his conviction for first degree felony theft based on the value of the property at issue (claim three); that he was denied a fair trial due to prosecutorial misconduct and the prosecutor's failure to comply with Ohio Criminal Rule 16 by failing to timely disclose a prosecution witness prior to trial (claims four and six); that he was denied the effective assistance of counsel because his attorney operated under a conflict of interest (claim five); that he was denied a fair trial because the trial court created its own jury questionnaire (claim seven); and

that the trial court abused its discretion in refusing to grant Petitioner's motion for a change of

venue (claim eight).

Respondent contends that Petitioner's claims are either procedurally defaulted or without

merit.

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case as follows:

> In common pleas case No. 07CR06–4563, the Franklin County
> Grand Jury indicted appellant on one count of engaging in a
> pattern of corrupt activity, one count of theft, five counts of
> forgery, five counts of money laundering, one count of identity
> fraud, and five counts of securing writings by deception. In
> common pleas case No. 07CR06–4568, the grand jury indicted
> appellant on one count each of forgery, identity fraud, and securing
> writings by deception. Appellant pleaded not guilty, and a jury trial
> ensued.
>
> At trial, plaintiff-appellee, the state of Ohio ("appellee"),
> established the following. Appellant participated in a mortgage
> fraud scheme that involved six properties and that defrauded
> mortgage lenders of over $1 million. Appellant never purported to
> be a buyer, seller or real estate agent during any of the transactions.
> Instead, appellant held himself out as a "facilitator" in the
> transactions. (Vol. X Tr. 1764.) Appellant paid others to portray
> straw buyers in pre-arranged property transactions. Appellant
> prepared falsified loan applications for the buyers, and presented
> falsified documents to mortgage brokers. Some of the buyers used
> stolen identities. Appellant kept $180,476.55 in proceeds from the
> mortgages in the five real estate transactions in case No. 07CR06–
> 4563.
>
> One buyer, Deborah Steele Bosley, testified that she met defense
> counsel through appellant. Taisean Glover, appellant's co-
> defendant, testified that defense counsel represented him on two
> separate occasions for drunk driving and driving under license
> suspension. Defense counsel's name appeared in some of the
> payment records in the real estate transactions because counsel had
> represented appellant previously. The trial court instructed the jury
> that the documents were being used only to show that appellant

3

received economic benefit from the real estate transactions. Defense counsel signed documents in a real estate transaction on behalf of a seller after the seller provided him power of attorney. The court instructed the jury that this evidence was being used only to show that the "documentation was executed." (Vol. III Tr. 298.) Defense counsel agreed to the court providing these instructions; defense counsel indicated that the instructions would resolve any potential problem.

Cornelius Mitchell acted as a straw buyer where he used the stolen identity of Jay Koblenz. The prosecution did not include Mitchell on the written witness list it provided the defense in discovery. During voir dire, the prosecution mentioned Mitchell as a possible witness. At opening statement, defense counsel mentioned that someone used Koblenz's stolen identity during one property transaction. Defense counsel argued, "[t]he question is who is this individual and whether [appellant] knew that he was not, in fact, Jay Koblenz." (Vol. III Tr. 294.) Subsequently, the prosecution informed defense counsel that Mitchell would testify. Defense counsel moved for a mistrial on counts related to Mitchell's participation. Defense counsel argued that Mitchell was a "surprise" witness and that he was not "ready to take on this witness." (Vol. IX Tr. 1386–87.) Defense counsel expressed concern about "the spill-over effect" of Mitchell's testimony on non-related counts. (Vol. IX Tr. 1386.)

The prosecution conceded that Mitchell was not "on a written witness list." (Vol. IX Tr. 1388.) The prosecution explained that it did not determine Mitchell's identity and role in the mortgage fraud scheme until two or three days before the trial started. The prosecution noted that it mentioned Mitchell as a potential witness during voir dire on September 22, 2008. The prosecution indicated that Mitchell "was not in custody to be interviewed" until Friday, September 26, 2008. (Vol. IX Tr. 1387.) The prosecution said that on the following Monday, September 29, 2008, it informed defense counsel that Mitchell might testify. The prosecution said, "[w]e still had not determined if we were going to call him until we could speak with him again [on the] morning" of Wednesday, October 1, 2008. (Vol. IX Tr. 1387.) The trial court denied the mistrial motion.

Mitchell testified the next day. Before Mitchell testified, defense counsel confirmed that he received Mitchell's video-and audio-taped statements and Mitchell's criminal record. Defense counsel said that he was "[r]eady to go." (Vol. X Tr. 1561.) Mitchell testified that he had known appellant for 44 years and that he

worked with appellant in the mortgage fraud scheme as a straw buyer who assumed Koblenz's identity. Mitchell testified that he was indicted on crimes related to the mortgage fraud and separate non-related criminal conduct. Mitchell testified that plea negotiations have yielded no agreements, but "conversations" with the prosecution may resume. (Vol. X Tr. 1584.) On cross-examination, Mitchell admitted to having previous convictions for forgery and theft.

During closing argument, defense counsel argued that Mitchell "is the only evidence that was presented that [appellant] knew that Jay Koblenz was not Jay Koblenz." (Vol. X Tr. 1768.) Defense counsel said that the jury needed to decide whether Mitchell truthfully testified. Defense counsel told the jury to be suspicious of Mitchell's testimony because he was charged as an accomplice in the mortgage fraud.

The court granted the prosecution's motion to dismiss the securing writings by deception counts in both cases. The jury found appellant guilty of the remaining counts in case No. 07CR06–4563. The jury was unable to reach a verdict on the remaining counts in case No. 07CR06–4568, and the court dismissed those counts. The court sentenced appellant to concurrent and consecutive prison terms for a total of 15 years imprisonment. At the conclusion of the trial, the court noted that defense counsel "conducted a spirited defense on [appellant's] behalf." (Vol. XII Tr. 43.) Appellant requested that the trial court appoint defense counsel for appeal.

*State v. Anderson*, No. 08AP–1071, 2009 WL 4809869, at *1–2 (Ohio App. 10th Dist. Dec. 15, 2009).

Represented by different counsel, *see Petition*, PageID# 102, Petitioner raised the following assignments of error on appeal:

1. The trial court erred by imposing consecutive sentences without making the required statutory findings pursuant to R.C. 2929.14(E)(4).

2. There was insufficient evidence to support a guilty verdict for the offense of theft as a felony of the first degree as the value of property and services stolen did not exceed one million dollars, as required by R.C. 2913.02(B)(2).

3. The trial court erred in permitting the state to introduce a surprise witness during the course of trial who was not listed in pre-trial discovery and who dramatically undermined Appellant's proffered defense. This denied Appellant due process under the state and federal Constitutions.

4. The trial court erred, in violation of Ohio's allied offense statute as set forth in R.C. 2941.25, in imposing consecutive terms of incarceration for the offenses of theft and forgery, arising from the same transaction.

5. Defense counsel's implication in the charges filed against his client and his involvement with the co-defendant denied Appellant due process and a fair trial as guaranteed under the state and federal Constitutions.

*Id*. at *3. On December 15, 2009, the appellate court affirmed the judgment of the trial court. *Id*.

On May 5, 2010, the Ohio Supreme Court accepted the appeal, but held the case pending

decision in *State v. Hodge. State v. Anderson*, 125 Ohio St.3d 1411 (2010). On January 25, 2011,

the Ohio Supreme Court affirmed the judgment of the state appellate court. *In re Cases Held for*

*Decision in State v. Hodge*, 128 Ohio St.3d 234 (2011).

Petitioner also pursued post conviction relief.

On July 27, 2010, defendant filed a motion to vacate a void judgment. Relying on cases that addressed a void sentence in the context of post-release control, defendant contended his conviction was void because (1) the court erroneously convicted him of first-degree felony theft when the evidence established defendant exerted control over less than $181,000; (2) the court allowed a violation of Crim.R. 16; (3) the prosecution advised the trial court that defendant's own attorney was implicated in the same transaction for which defendant was being tried; (4) prior to imposing consecutive terms of incarceration for defendant's felony convictions, the trial court failed to overcome the statutory presumption favoring concurrent sentences under R.C. 2929.14(E)(4); (5) none of the suits were instigated through the alleged victims' filing charging instruments; and (6) the trial court improperly modified its judgment following appeal.

6

The state responded with a memorandum that asserted the doctrines of res judicata and law of the case barred defendant's arguments, as they raise the same issues presented in defendant's direct appeal. The state further contended the motion was untimely under R.C. 2953.21. Accordingly, the state requested that the trial court deny defendant's motion. Following defendant's reply, the trial court issued a decision and entry denying defendant's motion. The court noted that each of the grounds defendant posited, with the exception of defendant's contentions regarding the charging instruments and the modified entry, were raised in defendant's appeal to this court. The trial court thus determined defendant could not re-litigate those issues in the common pleas court after the court of appeals resolved them in defendant's direct appeal.

As to defendant's argument regarding the charging instruments, the trial court determined not only that res judicata barred the argument since it could have been raised during the direct appeal, but also that the argument lacked merit. Lastly, addressing defendant's contention that the court lacked jurisdiction to change the sentencing entry after defendant filed his notice of appeal, the court pointed out that the nunc pro tunc entry diverged from the original sentencing entry only to effect corrections that did not disturb the substance of defendant's sentence. The court concluded that, in any event, defendant suffered no prejudice since his 15-year sentence remained the same.

* * * *

Defendant's single assignment of error on appeal asserts the trial court erred in denying his motion to vacate his void sentence.

*State v. Anderson,* No. 11 AP–236, 2011 WL 6834992, at *1–2 (Ohio App. 10th Dist. Dec. 22, 2011). On December 22, 2011, the appellate court affirmed the judgment of the trial court, concluding that Petitioner's claims were untimely and were foreclosed by Ohio's doctrine of *res judicata. Id.* at *3-5. Petitioner apparently never filed an appeal to the Ohio Supreme Court from that decision.

On August 17, 2010, Petitioner filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel based on his attorney's failure to raise the following issues on direct appeal:

1. Prosecutorial misconduct.

2. Misconduct of prosecution witness Christine Spencer.

3. Trial court's refusal to grant a motion for change of venue.

4. Improper jury questionnaires regarding mortgage crisis, destroyed prior to review by the defense.

*Anderson v. Warden, Chillicothe Correctional Institution*,  2:12-cv-130, *Exhibit 21* to *Motion to Dismiss,* ECF 8.[1]  On January 11, 2011, the appellate court denied Petitioner's Rule 26(B) application, reasoning that Petitioner had failed to establish good cause for the untimely filing. *Id., Exhibit 24* to *Motion to Dismiss.* Petitioner did not file an appeal to the Ohio Supreme Court from that decision.

> On January 4, 2011, appellant filed in the trial court a "Motion for Leave to File Delayed Motion for New Trial Pursuant to Crim.R. 33(B)" as well as a "Motion for New Trial pursuant to Criminal Rule 33(A)(2) [and] (6)." In support of his motions, appellant asserted that, on August 21, 2010, he received a letter from a title company dated August 17, 2010, that was accompanied by several pages of documents relative to a 2006 proposed transaction of real property located at 3717 Mason Road, Canal Winchester, Ohio that never closed. He claimed that the documents, sent to him from a title company, support his claim of innocence in that they demonstrate that one of the state's key witnesses perjured herself at trial. Appellant asserted that the documents would have changed the outcome of the trial and that the state received this information and intentionally suppressed it from the defense. Appellant further alleged that the prosecution engaged in misconduct in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), in withholding relevant evidence and knowingly permitting state witnesses to lie to the court under oath. He supported these allegations with his own affidavit dated December 6, 2010.

> The trial court found that the proffered evidence was not newly discovered in that appellant had acknowledged that he "remembered" the Mason Road transaction at some point after trial, FN1, justifying the conclusion that he had previously been

---

[1] Respondent's *Return of Writ* in this case incorporates by reference *Exhibits 1 – 66* to the *Motion to Dismiss* filed in *Anderson v.Warden, Chillicothe Correctional Institution*, 2:12-cv-130. *Return of Writ*, PageID# 205.

aware of it. The court further observed that appellant acknowledged in his motions that he had received the alleged newly discovered evidence on August 23, 2010 – 134 days prior to the filing of his motions on January 4, 2011. The court denied appellant's motion for leave to file an untimely motion for new trial for two reasons: "first, [the evidence] is not 'newly discovered' and second, his Motion is not timely." (Dec. 6, 2011 Decision at 2.)

FN1. In his brief in this court, appellant asserts that he remembered the Mason Road transaction while assisting appellate counsel with his direct appeal. The record of that appeal reflects that, on July 30, 2009, appellant filed his reply brief in his direct appeal to this court in case No. 08AP–1060. Accordingly, we infer that appellant must have "remembered" the Mason Road transaction sometime prior to August 2009.

Accordingly, the trial court did not issue an order stating that appellant had been unavoidably prevented from timely filing a motion for new trial, overruled appellant's motion for leave, and found it unnecessary to address the merits of appellant's motion for new trial. It nevertheless did address appellant's arguments as presented in his motion for new trial and found them to lack merit.

Appellant timely appeals, asserting four assignments of error which we summarize as follows:

1. The trial court abused its discretion and erred in denying appellant leave to file a motion for new trial based on the trial court's determination that appellant did not timely file his motion for leave.

2. The trial court erred in denying appellant's motion seeking a new trial based on alleged prosecutorial misconduct.

3. The trial court erred in denying appellant's motion seeking a new trial based on his assertion that the jury's verdict was not supported by the sufficiency of the evidence.

4. The trial court abused its discretion and erred in denying appellant's motion seeking a new trial based on his assertion that the state's witness had engaged in misconduct resulting in a miscarriage of justice and denial of a fair trial.

*State v. Anderson*, No. 12AP-133, 2012 WL 4848949, at *1-2 (Ohio App. 10th Dist. Oct. 11, 2012).  On October 11, 2012, the appellate court affirmed the judgment of the trial court, holding that

> [t]he trial court did not abuse its discretion nor err in denying [Petitioner's]  motion for leave to file his untimely motion for new trial and in failing to issue an order finding that [Petitioner] had been unavoidably prevented from discovering within 120 days of the verdict the evidence at issue concerning the Mason Road real estate transaction

*Id*. at *3.  The appellate court overruled Petitioner's first assignment of error, rendering the remainder of his claims moot.  *Id*.  Petitioner did not timely appeal from that decision.  On November 28, 2012, Petitioner filed a motion for a delayed appeal in the Ohio Supreme Court.  *Exhibit 71* to *Return of Writ*.  On January 23, 2013, the Ohio Supreme Court denied the motion and dismissed the appeal.  *Exhibit 73* to *Return of Writ.*

On September 25, 2013, Petitioner filed a motion for re-sentencing with the state trial court.  *Exhibit 105* to *Return of Writ*.  That matter apparently remains pending.  *See Return of Writ,* PageID# 215.

> On December 17, 2010, under case No. 07CR–06–4568, appellant filed the show cause motion, asking the court to enter an order requiring Christine Spencer, a witness in appellant's trial, to answer and show cause why she should not be held in contempt of court. Appellant asserted that Spencer committed perjury during his trial, alleging that the "prosecution's own expert witnesses contradict[ed] the testimony of Christine Spencer, not once but several times [during trial] with other expert witnesses as well." (Show cause motion, 2.) Appellant also alleged in the motion that "Christine Spencer has made statements concerning this case to the Court's," in violation of the court's order "barring all witnesses and potential witnesses from making extrajudicial statements." (Show cause motion, 2, 1.)

> Under case No. 07CR–06–4568, appellant also filed an "Affidavit for Arrest (or) Prosecution Pursuant to R.C. 2935.09" detailing the allegedly false testimony Spencer provided during the trial.

> Appellant subsequently filed a document asking the court to strike the affidavit for arrest or prosecution due to clerical errors. Appellant submitted a corrected affidavit for arrest or prosecution, alleging the same facts as the previous affidavit, but clarifying that Spencer's perjured testimony occurred in case No. 07CR–06–4563.
>
> On May 17, 2012, the trial court issued a decision and entry denying the show cause motion ("Decision"). The court held that appellant's claims regarding extrajudicial statements and perjury fell "within that class of claims that either were, or could have been, raised at the time of his appeal, OR within the time limits for post-conviction relief set forth by statute." (Decision, 3.) Accordingly, the court concluded that res judicata acted as a jurisdictional bar which precluded the court from considering the merits of the show cause motion. The court noted that the res judicata finding related to the convictions in case No. 07CR–06–4563. Regarding case No. 07CR–06–4568, the court held that "[b]ecause of the dismissal, there is nothing to appeal. That case is over. There were no convictions." (Decision, 3.)

*State v. Anderson*, No. 12AP-516, 2013 WL 2965253, at *1-2 (Ohio App. 10th Dist. June 13, 2013).  On June 13, 2013, the appellate court affirmed the judgment of the trial court, holding that Petitioner had failed to establish grounds for consideration of his untimely petition for post conviction relief.  *Id*. at *4.  Petitioner did not timely appeal from that decision.  On October 23, 2013, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal.  *State v. Anderson*, 137 Ohio St.3d 1457 (2013).

Petitioner also filed a series of other post-trial motions. On April 27, 2011, Petitioner filed a motion for resentencing, alleging that he had been improperly sentenced on counts ten and sixteen of the indictment. *Anderson v. Warden, Chillicothe Correctional Institution*, 12-cv-130, *Exhibit 47(b)* to *Motion to Dismiss.* On June 30, 2011, Petitioner asked the trial court to find the prosecutor and prosecution witness Christine Spencer in contempt because of alleged perjury. *Id.*, *Exhibit 50* to *Motion to Dismiss*. The trial court denied that motion on March 5, 2012. *Id.*, *Exhibit 51* to *Motion to Dismiss*.

On August 25, 2011, Petitioner filed a motion to vacate the order of restitution. *Id., Exhibit 52* to *Motion to Dismiss*. The trial court denied that motion on September 7, 2011. *Id., Exhibit 55* to *Motion to Dismiss*. On May 3, 2012, Petitioner filed a motion for delayed appeal in the state appellate court.  On May 9, 2012, the appellate court denied the motion on the ground that Ohio does not permit delayed appeals in post conviction proceedings, which are considered to be civil in nature.[2] *Exhibit 77* to *Return of Writ.*  Petitioner apparently did not pursue an appeal to the Ohio Supreme Court from that decision.

On January 6, 2012, Petitioner filed a motion to vacate his conviction and a motion for relief from judgment pursuant to Rule 60(b) of the Ohio Rules of Civil Procedure, raising various claims of prosecutorial misconduct, including an allegation that the prosecutor presented the false testimony of Christine Spencer.  *Anderson v. Warden*, *Chillicothe Correctional Institution*, 12-cv-130, *Exhibits 56, 57* to *Motion to Dismiss*. Those motions apparently remain pending in the state trial court.  *Return of Writ*, PageID# 216.

On March 23, 2012, Petitioner filed an application to disqualify the trial judge based on judicial bias.  *Anderson v. Warden*, *Chillicothe Correctional Institution*, 12-cv-130, *Exhibit 60* to *Motion to Dismiss*. On April 3, 2012, the Ohio Supreme Court denied that motion. *Id.*,  *Exhibit 61* to *Motion to Dismiss.*

Petitioner also made additional attempts to obtain post-conviction relief.  All of these actions were unsuccessful and none affects this Court's consideration of the issues raised in this action.

---

[2]  The appellate court stated:  "Appellant's appeal is not a direct appeal from his criminal conviction and App.R. 5(A) does not apply."  *Exhibit 77* to *Return of Writ*.

**Procedural Default: Claims Two, Seven and Eight**

Respondent contends that at least certain claims asserted by Petitioner in this action are procedurally defaulted. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, a federal habeas corpus petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a reviewing court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, a court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on

federal law.  *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id.* at 423 (*quoting James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998). Finally, if the court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent basis on which to do so, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to a failure to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim two, Petitioner alleges that the imposition of consecutive terms of incarceration for his convictions on theft and forgery violated Ohio's law on allied offenses of similar import and the Double Jeopardy Clause.  The state appellate court reviewed this claim for plain error only, because of Petitioner's failure to raise an objection on this basis before the trial court:

> [A]ppellant argues that he cannot be separately convicted and sentenced for theft and forgery because R.C. 2941.25 requires that the forgery offenses merge with the theft offense. We disagree.
>
> Appellant did not raise this objection in the trial court. Therefore, appellant forfeited all but plain error. See Crim. R. 52(B). Plain error exists when there is error, the error is an obvious defect in the trial proceedings, and the error affects substantial rights. *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

14

Ohio's multiple-count statute, R.C. 2941.25, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25 requires a two-step analysis. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 14. "'In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.'" (emphasis omitted.) *Id.*, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117. Under the first step, the elements are compared in the abstract without consideration of the evidence in a particular case. *Cabrales* at ¶ 22; *State v. Rance*, 85 Ohio St.3d 632, 636, 1999-Ohio-291. The elements of the compared offenses need not align exactly for the offenses to be allied offenses of similar import. *Cabrales* at ¶ 22. If the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. *Id.* at ¶ 26. Allied offenses of similar import committed with a single animus must merge into a single conviction. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 42. A defendant may be convicted and sentenced on multiple offenses if they are either "(1) offenses of dissimilar import [or] (2) offenses of similar import committed separately or with a separate animus." *Id.* at ¶ 17.

In *Brown*, the Supreme Court of Ohio said that "[w]hile our two-tiered test for determining whether offenses constitute allied offenses of similar import is helpful * * * it is not necessary to resort to that test when the legislature's intent is clear from the language of the statute." *Id.* at ¶ 37. However, in *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, ¶ 7-14, the Supreme Court of Ohio reaffirmed that the two-tier test mentioned in *Rance* and *Cabrales* governs the multiple-offense issue.

Appellant argues that forgery and theft are allied offenses of similar import under the first prong of the two-tier test. We analyze the offenses in the abstract under this first prong. *See Cabrales* at ¶ 22; *Rance* at 636. R.C. 2913.02 defines "theft" and states:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

R.C. 2913.31(A) defines "forgery" and states:

(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

> (1) Forge any writing of another without the other person's authority;
>
> (2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;

> (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

Appellant notes that, in *State v. Wolfe* (1983), 10 Ohio App.3d 324, 325-26, the Second District Court of Appeals concluded that theft and forgery are allied offenses of similar import. After *Wolfe*, however, the Second District held that theft and forgery are not allied offenses of similar import. *See Edwards* at ¶ 18-28, and *Musselman* at ¶ 37. In *State v. Kuhlen* (Nov. 23, 1999), 10th Dist. No. 99AP-107, we rejected *Wolfe* because the court applied a "fact-based analysis" that *Rance* disapproved. We compared theft and forgery in the abstract and concluded that the offenses are not allied offenses of similar import. We noted that "it is clear that the commission of one does not necessarily result in the commission of the other." While "[f]orgery involves the creation of a spurious writing with the purpose to defraud," a theft "involves obtaining or exerting control over property with the purpose of depriving owner of the property without the owner's consent." Conversely, "[f]orgery does not involve exerting control over property without the consent of the owner" and "theft does not involve a fraudulent writing."

Appellant argues that our analysis in *Kuhlen* disregards situations where forgery results in financial gain and control over property. However, a forgery offense is not dependent on the defendant's financial gain and control over property. *See State v. Habash* (Jan. 31, 1996), 9th Dist. No. 17073 (recognizing that "[d]efendants' forgery convictions were based on their acts of endorsing the food stamps. Their theft convictions, on the other hand, were based on the acts of redeeming the food stamps for cash"). In fact, a forgery offense can result from the defendant not obtaining financial gain and control over property. *See State v. Crittenden* (Mar. 7, 1979), 1st Dist. No. C-780315 (upholding a forgery conviction where a defendant forged a signature on a credit card, but did not complete a sale attempted with the credit card). Further undermining appellant's argument is that, in his second assignment of error, appellant distinguishes theft from forgery by citing *Edwards* and *Musselman* for the contention that theft requires an individual to obtain or exert control over property and forgery does not have this requirement.

We conclude that theft and forgery are not allied offenses of similar import. Thus, our analysis under R.C. 2941.25 ends. *Rance*, at 636. Appellant's forgery offenses do not merge with the theft

> offense, and the trial court did not commit error, let alone plain error, by separately convicting and sentencing appellant for forgery and theft. Therefore, we overrule appellant's fourth assignment of error.

*State v. Anderson*, 2009 WL 4809869, at *7-9.

Because Petitioner failed to present this issue to the trial court by way of contemporaneous objection, the first prong of *Maupin* has been satisfied. Ohio applies a contemporaneous objection rule to any error that could have been avoided or corrected by the trial court had a contemporaneous objection been made. *LeFort v. Century 21–Maitland Realty Co.*, 32 Ohio St.3d 12 (1987). Under that rule, an appellant who fails to raise an objection to a trial court waives later review unless he can demonstrate "plain error." *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). Moreover, the state appellate court enforced that procedural rule in Petitioner's case, thereby satisfying the second prong of the *Maupin* test. The United States Court of Appeals for the Sixth Circuit "has held that a state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 745, 765 (6th Cir. 2006)(citing *Scott v. Mitchell*, 209 F.3d 854, 866, 866–67 (6th Cir. 2000). Ohio's contemporaneous objection rule qualifies as an adequate and independent state ground. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000). The state court's alternative ruling on the merits does not forgive Petitioner's waiver or otherwise revive the claim for purposes of habeas corpus review. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (Where state court's

dismissal of claim on merits constitutes an alternative holding, federal habeas court will nevertheless consider the claim to have been procedurally defaulted).[3]

In claim seven, Petitioner alleges that he was denied a fair trial because the trial court created its own jury questionnaire. In claim eight, Petitioner alleges that the trial court abused its discretion when it failed to grant Petitioner's request for a change of venue. These claims appear on the record and yet Petitioner failed to raise either of these claims on direct appeal. *See State v. Anderson*, 2009 WL 4809869, at *3. He may now no longer do so by operation of Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default. Ohio's doctrine *of res judicata* in this context is adequate and independent under the third part of the *Maupin* test. The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Petitioner may still secure this Court's review of claims two, seven and eight if he establishes cause for his procedural defaults as well as actual prejudice from the alleged constitutional violations.

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed

---

[3] Petitioner also waived habeas corpus claim two by failing to raise the claim in the Ohio Supreme Court. *See Anderson v. Warden, Chillicothe Correctional Institution,* 2:12-cv-130, *Exhibit 17* to *Motion to Dismiss.*

> to him [;] ... some objective factor external to the defense [that]
> impeded ... efforts to comply with the State's procedural rule."

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. at 753). Nothing in the record indicates that any external factor impeded Petitioner's ability to timely object at sentencing or to pursue proper appeals raising these otherwise defaulted claims.

The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as that claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000)(citing *Carrier*, 477 U.S. at 488-89). Although Petitioner was represented by different counsel in his direct appeal, he did not raise in that proceeding a claim that he had been denied the effective assistance of trial counsel. In his Rule 26(B) application, Petitioner alleged the ineffective assistance of his appellate counsel (although not necessarily on these grounds), but that application was untimely and the state appellate court explicitly dismissed the application for failure to show "good cause" for the untimely filing. *Anderson v. Warden, Chillicothe Correctional Institution*, No. 2:12-cv-00130, *Exhibit 24* to *Motion to Dismiss*, PageID# 329-31. The United States Court of Appeals for the Sixth Circuit has held that the time limit for filing a Rule 26(B) application constitutes an adequate and independent state ground for purposes of the *Maupin* analysis. *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002).

Therefore, Petitioner cannot rely on a claim of ineffective assistance of counsel to excuse his procedural default of the issues raised in claims two, seven and eight. *See Edwards v. Carpenter*, 529 U.S. at 451-52. (2000).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of

one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial*." Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidencewhether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted). The record in this action does not satisfy this standard.

In short, the Court concludes that Petitioner has waived this Court's consideration of the merits of claims two, seven and eight.

**Claims One, Three - Six**

A federal court may not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent "'when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent[ ]'" or "'when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000)). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of a petitioner's case. *Id*. at 699. A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

Section 2254(d)(2) also prohibits a federal court from granting an application for habeas relief on a claim that the state courts adjudicated on the merits unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this

regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

The remainder of Petitioner's claims will be evaluated under these standards.

**Claim One**

In claim one, Petitioner alleges that the trial court erred in imposing consecutive terms of incarceration without making the factual findings required by O.R.C. § 2929.14(E). The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant argues that the trial court erred by imposing consecutive sentences without making findings pursuant to Ohio's felony sentencing statutes. We disagree.
>
> Appellant challenges *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 99, where the Supreme Court of Ohio excised as unconstitutional statutes that obliged trial courts to make certain findings before imposing consecutive sentences. Appellant claims that *Foster* is wrong, pursuant to *Oregon v. Ice* (2009), --- U.S. ----, 129 S.Ct. 711, and that, despite *Foster*, he was entitled to be sentenced under these excised statutes. In *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, ¶ 35, the Supreme Court of Ohio declined to address *Ice* because the issue had not been properly presented and briefed, and the court reiterated *Foster's* decision to take "away a judge's duty to make findings before" imposing consecutive sentences. The Supreme Court of Ohio continues to adhere to *Foster*, and we decline to depart from *Foster* until that court directs otherwise. *State v. Crosky,* 10th Dist. No. 09AP-57, 2009-Ohio-4216, ¶ 6-8. Therefore, we overrule appellant's first assignment of error.

*State v. Anderson*, 2009 WL 4809869, at *3.

A claim based only on an alleged violation of state law offers no basis for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a

perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal court "must defer to a state court's interpretation of its own rules of . . . procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). Such claims are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 388, 897 (6th Cir. 2008). To the extent that claim one alleges only a violation of Ohio law, then, that claim is without merit.

Petitioner's claim one may also be read as alleging that the trial court violated *Oregon v. Ice*, 555 U.S. 160 (2009), when it imposed consecutive terms of incarceration without making factual findings. That claim is plainly without merit.

> [T]he Ohio Supreme Court had ruled in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio 2006), that portions of Ohio's sentencing statutes, including the provision requiring the trial judge to make certain findings before imposing consecutive sentences, violated the defendant's Sixth Amendment right to a jury trial under the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). To remedy the constitutional defects, the *Foster* court severed the unconstitutional provisions and held, among other things, that the trial court had "full discretion" to impose consecutive prison terms without making findings or giving reasons for its decision. *Foster,* 845 N.E.2d at 497–99. Nearly three years later, in *Ice*, the Supreme Court upheld the constitutionality of Oregon's sentencing statute, which like Ohio's pre- *Foster* statute, required the trial judge to make factual findings prior to imposing consecutive sentences. In so ruling, the Court reasoned that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment. *See Ice,* 555 U.S. at 167–69.

*Scott v. Warden*, No.1:12–cv–118, 2013 WL 2096641, at *5 (S.D. Ohio May 14, 2013).  In other words,

> [a] state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice*, 555 U.S. 160, ——, 129 S.Ct. 711, 714–15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.*

*Jordan v. Sheets,* 2012 WL 553091, at *19 (S.D. Ohio Feb. 21, 2012).  Simply put, *Oregon v. Ice* does not support Petitioner's claim that his constitutional rights were violated when consecutive sentences were imposed in his cases.  Claim one is therefore without merit.

**Claim Three**

In claim three, Petitioner alleges that the evidence is constitutionally insufficient to sustain his conviction on the first degree felony of theft because the value of the property and service stolen did not exceed one million dollars, as is required by O.R.C. § 2913.02(B)(2). Petitioner specifically argues that evidence adduced by the State established, at most, only a third degree felony.  The state appellate court rejected this claim as follows:

> [A]ppellant argues that his conviction for first-degree felony theft is based on insufficient evidence. We disagree.
>
> Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *Jenk*s at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

25

Theft is a first-degree felony if "the value of the property or services stolen is one million dollars or more." R.C. 2913.02(B)(2). Appellant's first-degree felony theft conviction stems from mortgages procured in the five real estate transactions in case No. 07CR06-4563. The mortgages exceeded $1 million. Appellant does not dispute that he can be convicted of theft for the mortgage fraud scheme. *See State v. Wells*, 8th Dist. No. 92130, 2009-Ohio-4712, ¶ 16-26 (concluding that a defendant was guilty of theft for engaging in a mortgage fraud scheme). *See also State v. Huff*, 8th Dist. No. 92427, 2009-Ohio-5368, ¶ 36-39 (same). Appellant notes that R.C. 2913.02(A), which defines "theft," states that no person "shall knowingly obtain or exert control over * * * property or services." Appellant contends that he only obtained and exerted control over $180,476.55 in proceeds from the mortgages in the five real estate transactions. Appellant notes that this amount makes the theft a third-degree felony. *See* R .C. 2913.02(B)(2). To bolster his argument, appellant distinguishes theft from forgery. Appellant cites *State v. Edwards*, 2d Dist. No. 22648, 2009-Ohio-1408, ¶ 18-28, and *State v. Musselman*, 2d Dist. No. 22210, 2009-Ohio-424, ¶ 37, which held that theft and forgery are not allied offenses of similar import because theft, unlike forgery, requires an individual to obtain or exercise control over property.

The statute does not define "obtain." Therefore, we will give it its common and ordinary meaning. *Basic Distrib. Corp. v. Ohio Dept. of Taxation,* 94 Ohio St.3d 287, 292, 2002-Ohio-794. "Obtain" means to "get, acquire, or procure, as through an effort or by a request." Webster's Unabridged Dictionary (Random House 2d ed.2001). In *Lane v. State* (1984), 60 Md.App. 412, 415-26, the court upheld a defendant's theft conviction from his participation in a mortgage fraud scheme that involved the defendant procuring straw buyers and inducing them to provide fraudulent information to a lender. The court concluded that "the jury could fairly infer that [the defendant] used deception" to obtain the mortgages. *Id.* at 421. The court held that the "value" of the theft was the entire monetary amount of the mortgages acquired and that defendant was culpable for this entire amount. *Id.* at 425. We agree with the rationale in *Lane.* Utilizing this rationale, and applying the common and ordinary meaning of "obtain," we conclude that the evidence established that appellant engaged in a mortgage fraud scheme to "get, acquire, or procure," *i.e.,* obtain, the loans exceeding $1 million in case No. 07CR06-4563 and that appellant is culpable for the entire amount of the loans.

"Control" is also undefined in the statute. The common and
ordinary meaning of "control" is "to exercise restraint or direction
over; dominate; command." Webster's Unabridged Dictionary
(Random House 2d ed.2001). Applying the common and ordinary
meaning of "control," we conclude that appellant exercised control
over the loans exceeding $1 million in case No. 07CR06-4563 by
engaging in a mortgage fraud scheme to deceive lenders into
relinquishing money for the loans.

In the final analysis, appellant did not just obtain and exercise
control over the $180,476.55 in proceeds he retained from the
mortgages in case No. 07CR06-4563. Appellant engaged in the
mortgage fraud scheme to obtain and exercise control over the
mortgages in their entirety, and this amount exceeded $1 million.
Accordingly, sufficient evidence supports appellant's first-degree
felony theft conviction. Therefore, we overrule appellant's second
assignment of error.

*State v. Anderson*, 2009 WL 4809869, at *4-5. The factual findings of the state appellate court
are presumed to be correct. Petitioner does not appear to dispute these findings nor has he met
his burden of rebutting the presumption of correctness afforded the state's factual findings by
clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Before a criminal defendant can be convicted consistent with the United States
Constitution, there must be sufficient evidence to justify a reasonable trier of fact in finding guilt
beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining
whether the evidence was sufficient to support a conviction, this Court must view the evidence in
the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing
*Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis
except that of guilt." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record
that supports conflicting inferences must presume - even if it does not appear on the record - that
the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that
resolution.'" *Id.* (quoting *Jackson*, at 326). Moreover, this Court defers to a state court's

27

interpretation of its own laws and does not function as an additional state appellate court reviewing decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988).

A state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the applicable standard, as announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a habeas court concludes that no rational trier of fact could have so found, that court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and for the reasons discussed by the state appellate court, Petitioner has failed to do so here.

Petitioner's third claim is without merit.

**Claims Four and Six**

In claims four and six, Petitioner alleges that he was denied a fair trial because the trial court permitted one Cornelius Mitchell to testify as a prosecution witness after the prosecutor had failed to timely disclose Mitchell as a prosecution witness, in violation of Rule 16 of the Ohio Rules of Criminal Procedure. Petitioner also alleges that this failure on the part of the prosecutor constituted prosecutorial misconduct. Had he known that Mitchell would testify against him, Petitioner contends, he would not have proceeded to trial, but would have entered a guilty plea. *Reply*, ECF 15, PageID# 2978.[4]

The state appellate court denied Petitioner's claim in this regard, reasoning as follows:

---

[4] Petitioner asks the Court to remand the case to the trial court for either a hearing on the issue or the entry of a guilty plea and a sentence of five years' incarceration. *Id.*, PageID# 2979.

]A]ppellant contends that the prosecution contravened Crim.R. 16 discovery rules by calling Mitchell to testify without disclosing him on its witness list. At trial, appellant argued that the discovery violation required the trial court to declare a mistrial on counts related to Mitchell's participation. On appeal, appellant adds that the discovery violation required the trial court to not allow Mitchell to testify.

Under Crim.R. 16, at the request of the defendant, the prosecution shall provide a written list of the witnesses it intends to call at trial. *See State v. Finnerty* (1989), 45 Ohio St. 3d 104, 106. The prosecution has a continuing duty to provide this information prior to or during trial. Crim.R. 16(D). A discovery request triggers the duties on an opposing party, and that party is not free to ignore the request to wait for a court order. *See State v. Love* (Nov. 17, 1992), 10th Dist. No. 92AP-689, citing *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 4. The prosecution violated Crim.R. 16 by calling Mitchell to testify without including him on its written witness list.

Prosecutorial violations of Crim.R. 16 result in reversible error only when there is a showing that (1) the violation was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 131. *Accord State v. Bruce,* 10th Dist. No. 07AP-355, 2008-Ohio-4370, ¶ 70. Here, even if appellant could show that the state's violation was willful and that pre-trial disclosure would have aided his defense, we discern no prejudice.

During *voir dire*, the prosecution disclosed Mitchell as a possible witness. And, after Mitchell was placed in custody and interviewed, the prosecution told the defense that Mitchell was a prospective witness.

At trial, defense counsel argued that he was inadequately prepared for Mitchell's testimony. Defense counsel did not request a continuance, however. Instead, just before Mitchell testified, defense counsel said that he was ready to proceed after confirming that he received Mitchell's video- and audio-taped statements and his criminal record. In the absence of a request for a continuance, the trial court could properly conclude that the defense was prepared to go forward at that time. *Finnerty* at 108.

On appeal, appellant asserts that production of Mitchell's testimony in the middle of trial crippled his defense because, contrary to Mitchell's testimony, defense counsel argued during opening

29

statement that appellant did not know someone assumed Koblenz's identity. Notably, defense counsel did not specify this concern in the trial court. Defense counsel merely made a vague reference to a "spill-over effect" of Mitchell's testimony. (Vol. IX Tr. 1386.) In any event, appellant's claim lacks merit. Because defense counsel had notice of Mitchell being a potential witness when the prosecution mentioned his name during *voir dire*, defense counsel had at least an opportunity to inquire about the prosecution's use of the witness and alter his trial strategy to account for the witness. *See Love* (recognizing the need for the defense to take "ameliorative actions that were readily available" after a discovery violation).

Moreover, as the trial progressed, defense counsel successfully incorporated Mitchell's testimony into appellant's defense by challenging Mitchell's credibility and highlighting this weakness in the prosecution's case. In particular, defense counsel impeached Mitchell with his prior crimes of theft and forgery. Defense counsel was properly able to impeach Mitchell with these offenses because they were crimes of dishonesty. *See State v. Taliaferro* (1981), 2 Ohio App.3d 405, 406-07. Likewise, defense counsel portrayed Mitchell's testimony as dubious because he was charged as an accomplice to the mortgage fraud.

We also need not reverse appellant's convictions for the discovery violation because, apart from Mitchell's testimony, overwhelming evidence established appellant's guilt in the fraudulent Optimara Drive real estate transaction that involved Mitchell. *See Love* (declining to reverse a defendant's conviction for the prosecution's failure to timely disclose evidence, pursuant to Crim.R. 16, because other evidence overwhelmingly established the defendant's guilt). The actual Koblenz testified that someone stole his identity to purchase the Optimara Drive property. Koblenz identified documents that were fraudulently manufactured in his name; these documents were necessary for the Optimara Drive transaction and included loan records and copies of a bank statement, a vendor's license, and a driver's license. Koblenz also described as false a letter for a loan officer that purported to identify an accounting firm he used, and a representative from the accounting firm verified that the firm did not work with Koblenz. The evidence showed that appellant facilitated this Optimara Drive transaction through use of Koblenz's stolen identity. Robert Robinson financed construction on Optimara Drive and testified that appellant presented a buyer referred to as Koblenz. Appellant said that this man was an acquaintance, but Robinson later found out that the buyer was not the real Koblenz. Although appellant

> acted surprised when Robinson told him that the buyer was not really Koblenz, this reaction was disingenuous because police found, in appellant's home, those documents that the real Koblenz identified as fraudulent.
>
> Because appellant cannot satisfy all three *Jackson* prongs, we discern no reversible error from the prosecution's Crim.R. 16 violation. Accordingly, we need not disturb the trial court's decision to deny appellant's mistrial motion and to allow Mitchell to testify. *See State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 54-55 (concluding that a defendant's requested discovery violation sanction was not warranted because the *Jackson* prongs were not satisfied). Therefore, we overrule appellant's third assignment of error.

*State v. Anderson*, 2009 WL 4809869, at *7-8.

The alleged violation by a state prosecutor of Rule 16 of the Ohio Rules of Criminal Procedure, even if true, constitutes a state law claim that does not offer a basis for federal habeas corpus relief. As noted *supra*, a federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988).

Here, the state appellate court determined that the prosecutor violated the mandates of Ohio's Crim. R. 16, but that the violation did not warrant a sanction under *State v. Jackson,* 107 Ohio St.3d.53, ¶ 131. *See State v. Anderson*, 2009 WL 4809869, at *5-7. This Court must defer to the state appellate court's interpretation of its own rules and procedure. *See Allen v. Morris*, 845 F.2d at 614 (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)).

Petitioner also claims that he was denied a fair trial, because of prosecutorial misconduct, when the prosecution failed to identify Mitchell as a prosecution witness prior to the beginning of trial. It is true that the prosecution must produce evidence favorable to an accused. *Brady v.*

*Maryland* (1963), 373 U.S. 83, 87 (1963). However, Petitioner does not allege that Mitchell could have provided any exculpatory evidence for the defense. To the contrary, Petitioner alleges that Mitchell's testimony dramatically undermined his defense, causing unfair prejudice to Petitioner and resulting in an unfair trial. *Petition*, PageID# 99.

The United States Supreme Court has never held that the Constitution requires that the prosecution reveal, prior to trial, the names of all witnesses who will testify for the prosecution. *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Id* . at 559; *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). *See also Warlick v. Romanowisky*, 367 Fed.Appx. 634, 639, unpublished, 2010 WL 729528 (6th Cir. March 3, 2010)(same). The Constitution does not demand "'that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.'" *United States v. Agurs*, 427 U.S. 97, 109 (1976)(quoting *Moore v. Illinois*, 408 U.S. 786, 795 (1972).

Claims four and six are without merit.

**Claim Five**

In claim five, Petitioner alleges that he was denied a fair trial because his attorney had previously represented prosecution witness Taisean Glover, was an acquaintance of prosecution witness Deborah Steele Bosley, was criminally involved in the charges at issue, and because he was "involved with the co-defendant." *Petition*, PageID# 105; *Petitioner's Reply,* PageID# 2979-81; *Anderson v. Warden, Chillicothe Correctional Institution*, 2:12-cv-130, *Exhibit 17* to *Motion to Dismiss*, PageID# 246. Petitioner represents that, as a result, his attorney improperly advised Petitioner to reject the government's plea offer, failed to request a continuance after learning that Cornelius Mitchell would testify as a prosecution witness, failed to object to the

trial court's restitution order, and failed to properly investigate the case. *Petitioner's Reply*, PageID# 2982-83.

The state appellate court denied this claim, reasoning as follows:

> Appellant argues that his defense was tainted in front of the jury because defense counsel (1) received money from some of the real estate transactions that were part of the fraud, (2) had power of attorney to sign documents in a real estate transaction that was part of the fraud, (3) knew witness Bosley, (4) previously represented witness and co-defendant Glover, and (5) had a longstanding relationship with appellant. Appellant also argues that, due to these factors, (1) defense counsel should not have represented him, and (2) defense counsel violated ethical duties by representing him.
>
> Appellant invokes constitutional due process and fair trial protections. According to the United States Supreme Court, no right ranks higher than a defendant's constitutional right to a fair trial. *Press-Ent. Co. v. Superior Court of California, Riverside Cty.* (1984), 464 U.S. 501, 508, 104 S.Ct. 819, 823. A fair trial in a fair tribunal is a basic requirement of due process. *State v. Lane* (1979), 60 Ohio St.2d 112, 114. As appellee recognizes, appellant's claims concerning defense counsel also evoke the constitutional right to effective assistance of counsel. *See Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (recognizing that a defendant receives ineffective assistance of counsel in violation of the Sixth Amendment when counsel's performance is outside the range of professionally competent assistance and results in prejudice to the defense).
>
> We conclude that appellant was not denied due process and a fair trial and did not receive ineffective assistance of counsel. Because the evidence did not show any criminal involvement by defense counsel, there was no taint to appellant's defense from defense counsel's representation. Moreover, the trial court provided limiting instructions to cure improper inferences, and a jury is presumed to follow instructions that the trial court provides. *State v. Stallings,* 89 Ohio St.3d 280, 286, 2000-Ohio-164. Although appellant contends that defense counsel violated ethical duties by remaining on the case, appellant points to no specific rule of professional conduct to support this contention. In fact, the record is devoid of evidence that defense counsel compromised his duties as appellant's attorney. Defense counsel's efforts resulted in a hung jury in case No. 07CR06-4568. At the conclusion of the trial, the court complemented [sic] defense counsel on providing appellant

"a spirited defense." (Vol. XII Tr. 43.) Appellant was pleased enough with defense counsel's performance to originally request his services on appeal. Accordingly, we overrule appellant's fifth assignment of error.

*State v. Anderson*, 2009 WL 4809869, at \*9-10.

A claim that defense counsel labored under a conflict of interest is tantamount to a claim of ineffective assistance of counsel governed by *Strickland v. Washington,* 466 U.S. 668 (1984). *Brooks v. Bobby*, 660 F.3d 959, 963–64 (6th Cir. 2011). A defendant must show by the preponderance of the evidence that defense counsel "actively represented conflicting interests" and that the "actual conflict of interest adversely affected his lawyer's performance." *Burger v. Kemp*, 483 U.S. 776, 783 (1987); *Mickens v. Taylor*, 535 U.S. 162, 171 n. 5 (2002). However, where defense counsel labors under an actual conflict of interest, *e.g.,* where a single attorney represents multiple defendants, prejudice to the defense is presumed. *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 487–91 (1978). *See also  Mickens v. Taylor*, 535 U.S. 162, 174–76 (2002); *Jalowiec v. Bradshaw*, 657 F.3d 293, 314–15 (6th Cir. 2011), *McElrath v. Simpson*, 595 F.3d 624, 630–31 (6th Cir. 2010); *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–54 (6th Cir. 2006); *Gillard v. Mitchell*, 445 F.3d 883, 890–91 (6th Cir. 2006); *Whiting v. Burt*, 395 F.3d 602, 617–20 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 705–09 (6th Cir. 2004); *Moss v. United States*, 323 F.3d 445, 460–61 (6th Cir. 2003); *Smith v. Hofbauer*, 312 F.3d 809, 814–16 (6th Cir. 2002). *But see Fautenberry v. Mitchell*, 515 F.3d 614, 627–28 (6th Cir. 2008) (applying *Cuyler* where petitioner complained that trial counsel served as a trustee for township where victim's body was found.). Moreover, where the trial court knows or reasonably should know that a particular conflict of interest exists, that court has a duty to inquire into the conflict. *Cuyler,* 446 U.S. at 347-48; *Holloway*, 435 U.S. at 483-84.

In the case presently before the Court, Petitioner complains that the trial court improperly failed to secure Petitioner's waiver of the claimed conflict of interest.  *Petitioner's Reply*, PageID# 2982.  However, Petitioner offers no support for any suggestion that the trial court knew or had reason to know that his defense counsel was involved in criminal activity or had previously represented Petitioner and any prosecution witness. Indeed, Petitioner offers no evidence that his attorney engaged in criminal activity or that, as a result, defense counsel improperly advised Petitioner to reject the government's plea offer.  Similarly, Petitioner identifies no exculpatory evidence that his attorney could have uncovered had he further investigated the case, nor does Petitioner explain how a request for a continuance, had one been made after learning that Cornelius Mitchell would testify as a prosecution witness, would have assisted the defense. Finally, Petitioner does not explain how his attorney performed in a constitutionally ineffective manner in connection with the trial court's order of restitution.

In short, Petitioner has failed to establish, by a preponderance of the evidence, that his defense counsel "actively represented conflicting interests" that adversely affected counsel's performance at Petitioner's trial.  Petitioner has therefore failed to meet his burden of establishing that the state courts' denial of this claim warrants relief.

Claim five is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

        *s/ Norah McCann King*
        Norah McCann King
        United States Magistrate Judge

October 30, 2014